IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| RYAN PAUL ELGIN,<br><br>Plaintiffs,<br><br>vs.<br><br>LOGAN CAMP, Individually, and CITY OF WINTERSET, IOWA.<br><br>Defendant. | CIVIL CASE NO. 4:23-cv-488<br><br><br><br>COMPLAINT AND JURY DEMAND |

COMES NOW Plaintiff, Ryan Paul Elgin, by his attorney, Robert Rehkemper, and for his Complaint and Jury Demand, state the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint under the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

2. The Court has supplemental jurisdiction of the Iowa statutory and common law claims, pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within the District.

## PARTIES

4. Plaintiff Ryan Elgin ("Elgin") is a citizen of the United States and is a resident of Casey, Adair County, Iowa.

1

5. Defendant, Logan Camp ("Camp"), is a citizen of the United States and is upon information and belief, a resident of Madison County, Iowa.

6. Camp was at all times relevant hereto, a certified peace officer in the state of Iowa, employed by the Winterset Police Department which has its principal place of business located in Winterset, Madison County, Iowa.

7. Defendant, City of Winterset ("Winterset"), is a municipal corporation organized and existing under the laws of Iowa and acting under the color of State law, operating the Winterset Police Department.

8. Camp, as a certified peace officer, had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws.

9. At all times material hereto, Camp was acting within the scope and course of his employment as a peace officer with the Winterset Police Department.

10. This cause of action arose in Winterset, Madison County, Iowa, Southern District of Iowa.

11. The undersigned hereby certifies that this action meets the applicable jurisdictional demands for the amount in controversy.

12. Plaintiffs cause of action against all defendants concerns violations of his constitutional rights and personal liberties and are brought, to the extent applicable pursuant to 42 U.S.C. §1983, the common law and/or Chapter 670 of the Iowa Code ("municipal tort claims act").

## FACTUAL ALLEGATIONS

13. On October 15, 2022, at approximately 9:20 p.m., Elgin was operating a non-commercial vehicle in Winterset, Iowa, accompanied by Becky Oltmann and her minor child, C.O.

14. At all times material hereto, Elgin was over the age of 21-years.

15. At that same date and time, Camp was on "routine patrol" in a marked squad car, acting within the scope of his employment as police officer with Winterset Police Department.

16. On that date, at approximately 9:21 p.m., Camp executed a traffic stop of Elgin's vehicle.

17. Prior to initiating the traffic stop, Camp did not observe Elgin's vehicle commit any traffic violations.

18. Prior to initiating the traffic stop, Camp did not observe any equipment violations related to Elgin's vehicle.

19. Prior to initiating the traffic stop, Camp did not observe any facts which gave rise to a reasonable belief that Elgin was engaged in criminal activity.

20. Prior to initiating the traffic stop, Camp did not observe any facts which would give rise to a reasonable belief that Elgin was in need of emergency assistance.

21. Camp did not have probable cause justifying the stop of Elgin's vehicle.

22. Camp did not have reasonable suspicion of criminal activity necessary to justify the stop of Elgin's vehicle.

23. No legal justification authorized Camp's stop of Elgin's vehicle.

24. Following the traffic stop, Camp investigated Elgin for operating while intoxicated, in violation of Iowa Code section 321J.2.

25. Elgin was polite and cooperative with Camp during this investigation and submitted to standardized field sobriety testing.

26. Upon questioning, Elgin notified Camp that he had ingested a light dose of depression medication that morning and provided the names of each medication.

27. At all times material hereto, Elgin was prescribed Lexapro aka Escitalopram, and Zoloft aka Sertraline, both non-controlled prescription medications.

28. Elgin showed no legitimate basis to conclude he was impaired by drugs or alcohol during the Horizontal Gaze Nystagmus test.

29. Elgin showed no legitimate basis to conclude he was impaired by drugs or alcohol during the Walk and Turn test.

30. Elgin showed no legitimate basis to conclude he was impaired by drugs or alcohol during the One Leg Stand test.

31. At approximately 9:56 p.m., Elgin submitted to a preliminary breath test which indicated an alcohol concentration of .047.

32. At no time did Elgin demonstrate any objective symptoms that would lead a reasonable person or peace officer to conclude that he was operating a motor vehicle in violation of Iowa Code section 321J.2.

33. Despite Elgin providing a breath sample establishing an alcohol concentration well-below the legal limit of .08, Camp detained Elgin for purposes of conducting additional testing at the station.

34. Without his consent, Elgin's liberty was restrained, and he was transported to the Madison County Law Enforcement Center where he arrived at 10:02 p.m.

35. At 10:11 p.m., Camp invoked implied consent under chapter 321J of the Iowa Code, threatening Elgin with a revocation of his driving privileges if he refused the requested chemical testing.

36. On the form making the written request for a sample, Camp alleged under the penalty of perjury that "there existed reasonable grounds to believe the above named person was operating a motor vehicle in violation of Iowa Code Section 321J.2."

37. Said form also alleged that Elgin "submitted to a PBT which indicated an alcohol concentration of less than eight hundredths (.0.08) and the peace officer had reasonable grounds to believe that the person was under the influence of a drug other than alcohol or a combination of alcohol and another drug."

38. Elgin consented to a breath test on the State-Certified DataMaster DMT device which indicated an alcohol concentration of .037.

39. Camp then requested that Elgin consent to provide a urine sample for the purpose of testing it for the presence of a drug or controlled substance.

40. Elgin consented to providing a urinalysis sample and provided such sample.

41. Elgin was released from law enforcement custody at 10:54 p.m.

42. On December 8, 2022, the Iowa Department of Public Safety, DCI Criminalistics Laboratory authored a report documenting the results of their chemical analysis of Elgin's urine.

43. The DCI's toxicology report confirmed the presence of Citalopram in Elgin's system, consistent with his reported history of prescription medication.

44. The DCI's toxicology report also confirmed that Elgin's urine screened Negative for any controlled substances.

45. Camp received the DCI toxicology reports on December 9, 2022.

46. Camp made no effort to determine what type of substance would test positive for Citalopram in a urine toxicology test.

47. Camp did not attempt to determine if Citalopram was a controlled substance.

48. Camp did not request nor obtain any information associated with Elgin's prescriptions.

49. Despite the DCI toxicology reports confirming the only substance present in Elgin's system was a non-controlled substance that was consistent with Elgin's stated prescriptions, Camp concluded that Elgin was in violation of Iowa Code section 321J.2.

50. After consulting with his supervisor, Camp obtained an arrest warrant for Elgin for the charges of Operating While Intoxicated, Second Offense, and Child Endangerment.

51. Camp also submitted Form 432013, Request and Notice Under Iowa Code Chapter 321J/Section 321.208, to the Iowa Department of Transportation and falsely represented that Elgin's urine tested "positive" for a "Schedule I or II" controlled substance.

52. As a result of Camp's submission of Form 432013 to the Iowa Department of Transportation the Iowa Department of Transportation initiated a license suspension proceeding seeking to revoke Elgin's driving privileges for one (1) year.

53. Elgin turned himself in on the warrants on December 16, 2022, and was formally arrested for the offenses of Operating While Intoxicated, Second Offense and Child Endangerment, both Aggravated Misdemeanors in the State of Iowa.

54. The Notice of Revocation of Elgin's driving privileges was also served on Elgin on December 16, 2022.

55. Elgin was prosecuted for the offense of Operating While Intoxicated, Second Offense and Child Endangerment, in Madison County case number AGCR109992.

56. The charges were ultimately dismissed by the prosecution on April 13, 2023.

## DIVISION I
### Fourth Amendment (42 U.S.C. § 1983) - Unreasonable Seizure and Arrest
### Defendant Camp

57. Elgin incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

58. Camp lacked arguable probable cause or reasonable suspicion to justify the stop of Elgin's vehicle.

59. Camp lacked arguable probable cause to charge and arrest Elgin with the criminal offenses of Operating While Intoxicated, Second Offense, and Child Endangerment.

60. At all times material hereto, Camp was acting under color of state law.

61. Camp's actions in initiating a traffic stop of Elgin's vehicle violated Elgin's clearly established constitutional rights guaranteed by the Fourth Amendment to the United States Constitution.

62. Camp's actions of charging and arresting Elgin absent arguable probable cause, violated Elgin's clearly established constitutional rights guaranteed by the Fourth Amendment to the United States Constitution.

63. The law regarding this Division was clearly established.

64. As a direct and proximate result of Camp's conduct, Elgin suffered irreparable injury to his constitutional rights and personal liberties guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

65. As a direct and proximate result of Camp's conduct, Elgin suffered the following additional compensatory damages:

    a. Deprivation of his physical freedom and ability to move freely;

    b. Deprivation of his personal liberty;

    c. Physical and mental pain and suffering – past and future;

    d. Attorney fees associated with the defense of the criminal accusations;

    e. Other incidental out-of-pocket expenses

66. Elgin hereby seeks compensatory damages against Camp for the violation of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

67. Elgin further seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

## DIVISION II
### Common Law False Imprisonment and False Arrest
### Defendants Camp and Winterset

68. Elgin incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

69. Camp unlawfully and without legal justification, detained and/or restrained Elgin against his will.

70. Camp unlawfully and without arguable probable cause, arrested Elgin and accused him of criminal acts, resulting in the detention and restraint of Elgin's personal liberty.

9

71. Elgin submitted to Camp's asserted legal authority.

72. The common law prohibiting a person from Falsely Imprisoning and/or arresting and individual absent probable cause was clearly established at the time of the incidents described in this Complaint.

73. As a direct and proximate result of Camp's conduct, Elgin suffered damages as previously set forth above.

74. Pursuant to Iowa Code section 670.2, the city of Winterset is liable for the torts of its employees, acting withing the scope of their employment.

### DIVISION III
### Common Law Negligence and Municipal Tort Claims Act
### Defendants Camp and Winterset

75. Elgin incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

76. Iowa Code section 670.2, of the municipal tort claims act, imposes liability on municipalities for their torts and the torts of its officers and employees, acting within the scope of their employment or duties.

77. Unlike the state tort claims act, the municipal tort claims act does not exempt from liability, claims against a municipality or employee thereof, arising out of false arrest.  See Iowa Code § 669.14(3); and 670.4.

78. As a certified peace officer in the State of Iowa, Camp had a duty to act in conformity with the United States Constitution, the constitution of the State of Iowa, and other applicable federal and state laws.

79. Camp was negligent in one or more of the following particulars:

    a. Seizing Elgin's vehicle absent a legal justification;

    b. Restraining Elgin's freedom, transporting him against his will to the Madison County Law Enforcement Center, and continuing to restrain his liberty for the purpose of chemical testing, absent probable cause;

    c. Concluding that Elgin's prescription medications qualified as Controlled Substances under Iowa law;

    d. Failing to inquire as to whether any of Elgin's prescription medications qualified as Controlled Substances, as defined in chapter 321J of the Iowa Code;

    e. Arresting Elgin absent probable cause;

    f. Charging Elgin with the crimes of Operating While Intoxicated and Child Endangerment absent probable cause;

    g. Serving Elgin with a Notice of Revocation and instituting a license suspension procedure against Elgin despite his toxicology tests establishing an alcohol concentration below .08 and despite no controlled substances being detected in his system;

    h. Representing to the Iowa Department of Transportation that Elgin's toxicology results were "positive" for a "Schedule I or II" controlled substance.

    i. In failing to act as a reasonable law enforcement officer under the circumstances.

80. As a municipality employing law enforcement officers in the State of Iowa, Winterset had a duty to ensure that law enforcement officers operated in conformity with the United States Constitution, the constitution of the State of Iowa, and other applicable federal and state law.

81. Winterset was negligent in one or more of the following particulars:

    a. Failing to adequately train Camp;

11

    b. Failing to adequately supervise Camp;

    c. Failure to use and exercise that degree of skill, care and learning ordinarily possessed and exercised by cities and police departments in similar circumstances;

    d. Failing to act to comply with industry standards related to the training, supervision and oversight of officer under similar circumstances.

82. The law regarding government officials and agency's duty to exercise reasonable care was clearly established at the time of the incidents described in this Complaint.

83. As a result of the aforementioned conduct of Camp and Winterset, Elgin suffered damages as set forth previously.

**WHEREFORE** Plaintiff, Ryan Elgin, respectfully requests judgment against Defendants for actual and compensatory damages in a fair and reasonable amount; for interest at the legal rate; for attorney fees and for costs of this action and for such other and further relief as is allowed by law, consistent with the allegations herein contained, and the Court otherwise deems just and equitable in the premises.

## JURY DEMAND

Plaintiff, Ryan Elgin hereby demands a jury trial as to all claims stated in this Complaint.

        Respectfully Submitted,

        GOURLEY, REHKEMPER,
        & LINDHOLM, P.L.C.

        By: /s/ *Robert Rehkemper*
        _____
        Robert G. Rehkemper,  AT0006553
        440 Fairway, Suite 210
        West Des Moines, IA 50266
        Telephone No. (515) 226-0500
        Email:  rgrehkemper@grllaw.com
        ATTORNEY FOR PLAINTIFF

ORIGINAL FILED.